JD/AE: USAO#2025R00109
hmg.12.5.25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. JKB-25-381 |
| v. | : (Wire Fraud, 18 U.S.C. § 1343; Aggravated |
| | : Identity Theft, 18 U.S.C. § 1028A; Forfeiture, |
| CYNTHIA DELLOSA, | : 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and |
| | : 28 U.S.C. §2461(c)) |
| Defendant. | : |
| | : |
| | : |

...oOo...

## INDICTMENT

### COUNTS ONE THROUGH SEVEN
(Wire Fraud)

The Grand Jury for the District of Maryland charges:

### Introduction

At times material to this indictment:

1. Defendant **CYNTHIA DELLOSA ("DELLOSA")** lived in Annapolis, Maryland.

2. Victim 1 was a real person who lived in Virginia.

3. Victim 1 owned Business 1, which was headquartered in Anne Arundel County, Maryland, and performed services for the United States Department of Defense.

4. Victim 1 also owned Subsidiary 1 and Subsidiary 2, which were subsidiary businesses of Business 1.

5. **DELLOSA** was the lead accountant for Business 1. In that role, she also served as an accountant for Subsidiary 1 and Subsidiary 2.

1

6. Victim 1 had a signature stamp that was used to authorize actions, including the obligation of funds, in furtherance of the business affairs of Business 1, Subsidiary 1, and Subsidiary 2.

7. Bank of America, Toronto-Dominion Bank ("TD Bank"), United Bank, First National Bank, and M&T Bank were financial institutions as defined in 18 U.S.C. § 20. All of these entities are hereinafter collectively referred to as the "Financial Institutions."

8. The Financial Institutions maintained records concerning financial transactions in their accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open an account.

9. Financial institutions throughout the United States used a nine-digit number, called a routing number, along with a bank account number, to determine the particular financial institution and account that should receive funds from a wire transfer. Similarly, financial institutions placed the routing number and account number on checks so a bank receiving a check deposit could draw on the funds and account from which the check was issued.

10. Payward Interactive, Inc. ("Kraken") was a cryptocurrency exchange where customers can buy and sell cryptocurrencies. Cryptocurrency was a type of virtual currency that is decentralized, peer to peer, and a network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.

**The Scheme to Defraud**

11. From in or about March 2024, until in or about November 2024, in the District of Maryland, and elsewhere, the defendant,

**CYNTHIA DELLOSA,**

knowingly devised and intended to devise a scheme and artifice to defraud Business 1, Subsidiary 1, and Subsidiary 2, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme to Defraud**

12. It was a purpose of the scheme to defraud for **DELLOSA** to unlawfully enrich herself and others by using funds from Business 1, Subsidiary 1, and Subsidiary 2 for unauthorized purposes.

**Manner and Means of the Scheme to Defraud**

13. It was a part of the scheme to defraud that **DELLOSA** used multiple bank accounts, including the following:

    a. Bank of America accounts ending in 2062 and 2088 (hereinafter "BOA 2062" and "BOA 2088");

    b. a TD Bank Account ending in 2473 ("TD 2473"); and

    c. a United Bank account ending in 1126 ("United 1126").

**DELLOSA** was the only signatory on these four accounts.

14. It was further part of the scheme to defraud that **DELLOSA** used a Kraken Account ending in IUBA ("Kraken IUBA").

15. It was further part of the scheme to defraud that **DELLOSA** used her position as

the lead accountant for Business 1 to engage in unauthorized financial transactions for Subsidiary 1 and Subsidiary 2.

16. It was further part of the scheme to defraud that **DELLOSA** used her access to the financial records of Subsidiary 1 to issue checks payable to **DELLOSA**.

17. It was further part of the scheme to defraud that **DELLOSA** used the signature stamp bearing Victim 1's name to sign the bottom of checks payable to **DELLOSA** from Subsidiary 1.

18. It was further part of the scheme to defraud that **DELLOSA** deposited and caused the deposit of checks from Subsidiary 1 into BOA 2062, BOA 2088, TD 2473, and United 1126.

19. It was further a part of the scheme to defraud that **DELLOSA** caused wire payments from BOA 2088, and TD 2473 to Individual 1.

20. It was further a part of the scheme to defraud that **DELLOSA** caused a wire payment from United 1126 to Gracie's LLC.

21. It was further part of the scheme to defraud that **DELLOSA** used the signature stamp bearing Victim 1's name to sign the bottom of checks payable to Individual 1 from Subsidiary 2.

22. It was further part of the scheme to defraud that **DELLOSA** mailed checks to Individual 1.

23. It was further part of the scheme to defraud that **DELLOSA** transferred funds between BOA 2062, BOA 2088, TD 2473, and United 1126.

24. It was further part of the scheme to defraud that **DELLOSA** transferred funds between BOA 2088 and Kraken IUBA.

25. It was further part of the scheme to defraud that **DELLOSA** forwarded Business 1's phone line to a phone she controlled to conceal the unauthorized checks from Victim 1.

26. It was further part of the scheme to defraud that **DELLOSA** prepared promissory notes and other false documentation to conceal her scheme to defraud.

27. It was further part of the scheme to defraud that **DELLOSA** requested that Individual 2, who was an employee of a Business 1 subsidiary, purchase two Apple Gift Cards worth $5,000 each, using his company credit card, without Victim 1's knowledge.

28. It was further part of the scheme to defraud that **DELLOSA** fraudulently obtained over $550,000 in funds from Victim 1, Business 1, Subsidiary 1, and Subsidiary 2.

### Execution of the Scheme to Defraud

29. On or about the dates set forth below, in the District of Maryland, the defendant,

**CYNTHIA DELLOSA,**

for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE |
|---|---|---|
| 1 | 5/13/2024 | Deposit of Check No. 424, in the amount of $5,000, into BOA 2062, resulting in an interstate wire communication from Maryland to another State. |
| 2 | 6/25/2024 | Deposit of Check No. 432, in the amount of $25,000, into BOA 2088, resulting in an interstate wire communication from Maryland to another State. |
| 3 | 7/5/2024 | Deposit of Check No. 436, in the amount of $35,000, into BOA 2088, resulting in an interstate wire communication from Maryland to another State. |
| 4 | 8/27/2024 | Deposit of Check No. 450, in the amount of $60,000, into BOA 2088, resulting in an interstate wire communication from Maryland to another State. |

| 5 | 9/3/2024 | Deposit of Check No. 451, in the amount of $65,000, into BOA 2088, resulting in an interstate wire communication from Maryland to another State. |
| 6 | 9/11/2024 | Deposit of Check No. 452, in the amount of $70,000, into BOA 2088, resulting in an interstate wire communication from Maryland to another State. |
| 7 | 9/24/2024 | Deposit of Check No. 453, in the amount of $100,000, into BOA 2062, resulting in an interstate wire communication from Maryland to another State. |

18 U.S.C. § 1343

## COUNT EIGHT
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-10 of Count One of this Indictment are incorporated here by reference.

2. On or about September 3, 2024, in the District of Maryland and elsewhere, the defendant herein,

**CYNTHIA DELLOSA,**

did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, to wit, Victim 1, during and in relation to Wire Fraud, in violation of 18 U.S.C. § 1343.

18 U.S.C. § 1028A(a)(1), (c)
18 U.S.C. § 2

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c), in the event of the defendants' convictions on any of the offenses charged in Counts One through Seven of this Indictment.

### Wire Fraud Forfeiture

2. Upon conviction of any of the offenses set forth in Counts One through Seven of this Indictment, the defendant,

**CYNTHIA DELLOSA,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

    (a) cannot be located upon the exercise of diligence;

    (b) has been transferred, or sold to, or deposited with a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

the United States, pursuant to pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property, as incorporated by 28 U.S.C. § 2461(c)

18 U.S.C. § 982(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Kelly O. Hayes /ADE*
Kelly O. Hayes
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: 12/10/25